IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

LUCIA G., §
        Plaintiff, §
§
v. § No. 1:24-CV-083-BW
§
COMMISSIONER OF THE SOCIAL §
SECURITY ADMINISTRATION, §
        Defendant. §

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Lucia G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for Supplemental Security Income ("SSI") under Title XVI of the Act.  (*See* Dkt. No. 1.) The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(c) and Special Order Nos. 3-350 and 3-354.  (*See* Dkt. No. 12.)

Plaintiff filed a brief on appeal (Dkt. No. 15 ("P. Br.")), to which the Commissioner filed a brief in response (Dkt. No. 16 ("D. Br.")), and Plaintiff filed a brief in reply (Dkt. No. 17 ("Reply")).  After considering the pleadings, briefs, and administrative record, the Commissioner's decision is **REVERSED** and **REMANDED** for administrative further proceedings as set forth below.

## I.  BACKGROUND

On May 24, 2021, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning May 24, 2021, due to hypertension, diabetes, neuropathy in both feet, hernia, and migraines.  (*See* Transcript ("Tr.") 16, 211, 261.) The claims were denied initially on April 20, 2022, and again upon reconsideration on February 27, 2023, after which Plaintiff timely requested an administrative hearing.  (Tr. 16, 105, 115, 127, 135.)

On October 6, 2022, Administrative Law Judge Sherrill Carvalho ("the ALJ") held a telephonic hearing, at which Plaintiff appeared and testified.  (Tr. 16.) Plaintiff was represented at the hearing by Matthew Lord, an attorney.  *Id.*  Barbara Dunlap, an impartial vocational expert, also appeared and testified at the hearing. *Id.*  The ALJ issued an unfavorable decision on January 25, 2024, finding Plaintiff not disabled.  (Tr. 16-27.)  On April 23, 2024, the Appeals Council denied Plaintiff's request for further review.  (Tr. 1-7.)  The ALJ's January 25, 2024 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## II.  LEGAL STANDARDS

### A.    District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*,

67 F.3d 552, 555 (5th Cir. 1995).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923.  To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision.  *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*,

706 F.3d 600, 603 (5th Cir. 2012)).  "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)).  "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'"  *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error."  *Id*. (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

**B.    The Sequential Evaluation Process**

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability."  *Copeland*. 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)).  The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months.  *See id*. § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)).  On the first four steps of the analysis, the claimant has the initial burden of proving that he is disabled.  *Bowen v. Yuckert*, 482

U.S. 137, 146 n. 5 (1987).  The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Id.*  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled.  *Id.* § 404.1509.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

5

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If an individual's impairment precludes him or her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III. ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her January 25, 2025 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since May 24, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Hypertension, diabetes, neuropathy in both feet, hernia, obesity, and migraines (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except light work with the following abilities and restrictions: Lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; stand and walk 6 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, scaffolds, or ropes; occasionally balance (as defined in the SCO), stoop, kneel, crouch, and crawl; and should avoid direct sunlight and very loud, level 5 noise.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 26, 1965, and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).).

(Tr. 16-27.)

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on May 24, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Act.  (Tr. 27.)  The ALJ also determined that, for the application for supplemental security income filed on May 24, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## IV.  ANALYSIS

Plaintiff asserts a single point of error—that "the ALJ's RFC determination is unsupported by substantial evidence because she constructed the RFC out of whole cloth."  (*See* P. Br. at 1, 7-12.)  Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not rely on a medical opinion and instead relied on her own lay interpretation of the raw medical data to assess Plaintiff's RFC.  (*See id.* at 8-12.)  In particular, Plaintiff complains that the ALJ had no basis, other than her own unsupported opinion, to determine that Plaintiff could perform the standing and walking requirements of light work despite her "diabetic neuropathy and well-documented foot and leg problems."   (*See id.*)

The Commissioner argues in response that the record contained sufficient evidence for the ALJ to properly assess Plaintiff's RFC, and neither the regulations nor controlling case law mandate that a claimant's RFC be derived directly from a medical opinion, as RFC is an administrative assessment rather than a medical assessment, and  Congress "tasked the ALJs with exclusive jurisdiction over the determination of a claimant's ability to engage in exertional and non-exertional

8

work-related task[s]." (*See* D. Br. at 5-7.)  According to the Commissioner, the ALJ

discussed evidence showing that Plaintiff was able to perform work at the light level

of exertion, including Plaintiff's reports that she was doing well and her normal

musculoskeletal examinations findings, and the ALJ's RFC finding was supported by

substantial evidence. (*See id*. at 7-10.)

## A.    Relevant Medical Evidence

On August 25, 2020, Plaintiff established care as a new patient with Rebecca

Perkins, NP ("Ms. Perkins"), at Texas Tech Physicians of Lubbock. (Tr. 379.)

Plaintiff's past medical history was significant for diabetes mellitus.  Plaintiff stated

that she had not checked her blood sugar in a while, but she took her Metformin

daily, and she was not concerned about her diabetes at that time. (*Id*.)  She reported

having an area of the left great toe that was swollen and discolored, and which

sometimes drained. (*Id*.)  She also reported having a partial colectomy two years ago

and a colostomy for about one year, which was reversed; after the reversal, she

developed a "knot" in her right lower quadrant that sometimes "popped out" when

she tried to lift anything. (*Id*.)  She reported having stomach pain and heartburn after

eating, but she had regular bowel movements and no constipation. (Tr. 379-80.)

Her examination indicated BMI of 31.47, which is defined as obese. (Tr. 382,

384.)  Her lungs were clear; her heart had a regular rate and rhythm with no

murmurs, rubs, or gallops; and there was right lower quadrant abdominal tenderness

and an inguinal hernia. (Tr. 382.)  Her musculoskeletal range of motion was

normal; strength was normal; and sensation and motor function were normal (Tr. 382-83). She was assessed with diabetes, cellulitis, and inguinal hernia.  (Tr. 388.)

On September 8, 2020, Plaintiff presented to Ms. Perkins for follow-up regarding lab results, which showed her A1C at 10.6 and her lipid panel elevated. (Tr. 366.)  Plaintiff stated she had been compliant with medications, and she had no acute concerns.  (*Id*.)  She denied shortness of breath, chest pain, headache, nausea, or swelling of extremities. (*Id*.)   Her examination indicated her lungs were clear; her heart had a regular rate and rhythm with no murmurs, rubs, or gallops; and she had no abdominal abnormalities.  (Tr. 368.)  Musculoskeletal range of motion and gait were normal.  (*Id*.)  Her diabetic foot examination was abnormal, showing no sensation of the toes (left 1st, 3rd, 5th, big, and right 1st, 3rd, 5th, big).  (Tr. 369.) Plaintiff was assessed with Type 2 diabetes and dyslipidemia; she was referred for diabetic education and was to "[c]ontinue all current medications" and "[b]egin Bydureon BCise and farxiga."  (Tr. 371-72.)

On September 22, 2020, Plaintiff presented to Ms. Perkins for a well woman exam.  (Tr. 449.)  Plaintiff reported she was doing well.  (*Id*.)  Her physical examination was unchanged with normal musculoskeletal range of motion and strength and no abnormal cardiopulmonary or abdominal findings.  (Tr. 452-53.)

On November 8, 2022, Plaintiff presented to the emergency room complaining of right flank pain, headache, and fever.  (Tr. 485.)  Her symptoms had started three days prior.  (*Id*.)  She had had decreased appetite and energy for one week and had not taken her diabetic medications during that time.  (Id.)  She was admitted for

evaluation and treatment. (Tr. 487) and discharged on November 16, 2022 (Tr. 476).

According to the discharge summary, Plaintiff was diagnosed with dilated CBD

(common bile duct), dyslipidemia, bacterial infection, headache, hyperglycemia,

hyponatremia, leukocytosis, diabetes, urinary tract infection, and abdominal pain.

(Tr. 478.) She was noted to have "very uncontrolled type 2 diabetes" and

"significant diabetic neuropathy" with "old dry wounds to toes bilaterally." (*Id*.) An

abdominal CT scan showed evidence of prior cholecystectomy and was otherwise

unremarkable. (Tr. 476.)

Plaintiff's physical examination on discharge indicated her BMI was 35.34;

her lungs were clear; her heart had a regular rate and rhythm with no murmurs, rubs,

or gallops; and she had no abdominal abnormalities. (Tr. 481.) She had no edema

or other abnormalities of her extremities, and her motor strength and sensation were

normal. (*Id*.) Physical examinations during Plaintiff's hospitalization indicated she

had no cardiopulmonary abnormalities; no musculoskeletal abnormalities, except for

right flank pain; and her musculoskeletal range of motion was normal (Tr. 487, 492.)

On September 24, 2023, imaging of the left foot showed osseous destructive

changes of the first proximal phalanges concerning for osteomyelitis. (Tr. 572.)

Plaintiff was hospitalized from October 3, 2023, through October 11, 2023, for

wound of the great left toe with worsening swelling and erythema, which eventually

required amputation of the toe. (Tr. 573-74.) According to the discharge summary

indicated, Plaintiff was diagnosed with osteomyelitis of left great toe, status-post

amputation of left great toe, diabetes with hyperglycemia, diabetic neuropathy,

11

hypertension, dyslipidemia, peripheral vascular disease, and anxiety hyperventilation.  (*Id.*)  Her examination upon discharge indicated that her lungs were clear with unlabored breathing; her heart had a regular rate and rhythm with no murmurs, rubs, or gallops; she had no abdominal abnormalities; and her musculoskeletal range of motion was normal.  (*Id.*)  Plaintiff's examinations during the hospitalization indicated similar findings, and she was alert, fully oriented, and cooperative with appropriate mood and affect, normal judgment, and normal psychiatric thoughts.  (*See* Tr. 581, 587, 598, 600.)

**B.    The ALJ's disability decision was not supported by substantial evidence.**

As noted above, Plaintiff contends that the ALJ improperly relied on her own lay opinion to determine that Plaintiff could perform the standing and walking requirements of light work despite significant diabetic neuropathy, amputation of her left great toe, and no sensation in her feet.  (*See* P. Br. 7-8.)  Plaintiff notes that if the ALJ had limited Plaintiff to sedentary work, given her advanced age, limited education, and work experience she would have been found disabled under the Medical-Vocational Guidelines.  (*See id.* (citing 20 C.F.R. §§ 404.1569, 416.969, App'x. 2 to Subpt. P of Pt. 404, 201.02).)

The Commissioner argues in response that because ALJs have "exclusive jurisdiction" over the RFC and the record contained sufficient evidence for the ALJ to properly assess Plaintiff's RFC, the ALJ was not required to rely on a medical source opinion.  (*See* D. Br. 5.)  While the Commissioner is correct that the ALJ is responsible for devising the RFC, that RFC must still have substantial evidentiary

support.  *See Ripley*, 67 F.3d at 557.  An ALJ cannot rely on her own unsupported

opinion as to a claimant's limitations resulting from medical conditions.  *Raper v.*

*Colvin*, 262 F. Supp. 3d 415, 422 (N.D. Tex. 2017) (citing *Williams v. Astrue*, 355 F.

App'x. 828, 832 n.6 (5th Cir. 2009)).

      RFC is what an individual can still do despite her limitations.  SSR 96-8p,

1996 WL 374184, at *2 (July 2, 1996).  It reflects the individual's maximum

remaining ability to do sustained work activity in an ordinary work setting on a

regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir.

2001).  A regular and continuing basis is an eight-hour day, five days a week, or an

equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an

individual can do but the most.  *Id.*  The RFC is a function-by-function assessment,

with both exertional and nonexertional factors to be considered, and it is based on all

the relevant evidence in the case record.  *Id.* at 3–6.  The responsibility for

determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019,

1023–24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform

sustained work activity on a regular and continuing basis and resolve any

inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

      In making the RFC assessment, the ALJ must consider all symptoms,

including pain, and the extent to which these symptoms can be reasonably accepted

as consistent with objective medical evidence and other evidence.  *See* 20 C.F.R.

§ 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996

WL 374184, at *5.  The ALJ must also consider limitations and restrictions imposed

by all of an individual's impairments, even impairments that are not severe.  *See* SSR

96-8p, 1996 WL 374184, at *5.  The ALJ may draw reasonable inferences from the

evidence in making his decision, but the social security ruling also cautions that

presumptions, speculation, and supposition do not constitute evidence.  *See, e.g.*, SSR

86-8, 1986 WL 68636, at *8 (1986), s*uperseded by* SSR 91-7c, 1991 WL 231791, at *1

(Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former

procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that she did not

find the record supported.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)

("The ALJ as factfinder has the sole responsibility for weighing the evidence and

may choose whichever physician's diagnosis is most supported by the record.").  In

reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only

if no credible evidentiary choices or medical findings support the decision.  *Boyd v.*

*Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

With respect to the ALJ's consideration of medical opinion evidence, the

Social Security Agency comprehensively revised its regulations governing medical

opinion evidence creating a new regulatory framework effective for claims filed on or

after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed.

Reg. 15, 132-01 (March 27, 2017).  Here, Plaintiff filed her claims on May 24, 2021,

and therefore, the 2017 regulations are applicable to her claims.

Under these revised regulations, the ALJ must determine the persuasiveness of a physician's medical opinion.  20 C.F.R. § 416.920c.  To determine the persuasiveness of each medical opinion, the ALJ considers supportability, consistency, relationship with the plaintiff, specialization, and other factors that tend to support or contradict a medical opinion.  *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The most important factors are supportability and consistency.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  An ALJ must also discuss how she considered the supportability and consistency factors in her determination or decision.  *Id.*  "At a minimum, the ALJ's discussion [of these factors] must give enough reasons to permit meaningful judicial review."  *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citations omitted).

In this case, the ALJ found, as stated above, that Plaintiff had the RFC to perform light work except that she could lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; stand and walk 6 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, scaffolds, or ropes; occasionally balance (as defined in the SCO), stoop, kneel, crouch, and crawl; and should avoid sunlight and very loud, level 5 noise.  (Tr. 21.)

Citing *Ripley* and other similar cases, Plaintiff argues that the ALJ erred when she found that Plaintiff could stand and walk for six hours in an 8-hour workday as there was no medical opinion in the record regarding the effects of Plaintiff's impairments on her RFC.  (*See* P. Br. 9-10.)  In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence

15

or testimony to support that conclusion.  67 F.3d at 557.  The Fifth Circuit noted that
the record contained a vast amount of evidence establishing that the claimant had a
back problem, but it did not clearly establish the effect that condition had on the
claimant's ability to work, remanded the case with instructions for the ALJ to obtain
a report from a treating physician regarding the effects of the claimant's back
condition on his ability to work.  *Id*. at 557–58.  The Fifth Circuit rejected the
Commissioner's argument that the evidence substantially supported the ALJ's
conclusion because the court was unable to determine the effects of the claimant's
condition, "no matter how 'small,'" on his ability to work, absent a report from a
qualified medical expert.  *Id*. at 557 n.27.

The Commissioner counters that the absence of a medical source statement,
"does not, in itself, make the record incomplete."  (D. Br. at 5 (citing *Ripley*, 67 F.3d
at 557).)  The Commissioner also cites *Joseph-Jack v. Barnhart*, 80 F. App'x. 317, 318
(5th Cir. 2003), for the proposition that "the Fifth Circuit rejected the claimant's
argument that because the record was devoid of an RFC assessment by a medical
source, the ALJ was not competent to assess RFC."  (D. Br. at 5.)  The Court finds
the Commissioner's citation to *Joseph-Jack* unpersuasive.  In *Moore v. Saul*, the court
rejected the Commissioner's identical argument, finding that "[i]n *Joseph-Jack*, the
ALJ relied on state medical consultants who had reviewed the claimant's medical
evidence and determined that the claimant was not disabled.  The ALJ created the
RFC but did so relying heavily on the opinions of medical experts."  *Moore v. Saul*,
No. 320cv161, 2022 WL 987735, at *3 (N.D. Miss. Mar. 31, 2022) (citing *Joseph-*

16

*Jack*, 80 F. App'x at 318); *see also Harris v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-487-P, 2023 WL 5826869, at *5 (N.D. Tex. Aug. 22, 2023), *adopted*, WL 5826975 (N.D. Tex. Sept. 8, 2023). "Accordingly, *Joseph-Jack* does not stand for the proposition that the ALJ may interpret medical data [her]self but rather affirms the ALJ's role in crafting the RFC in reliance on medical expert opinion." *Harris*, 2023 WL 5826869, at *5-6 (collecting cases remanded based on ALJ's reliance on lay opinion to formulate the RFC).

In contrast, the Court finds persuasive the analysis from a number of district courts throughout the Circuit that have considered whether the ALJ impermissibly substituted his or her lay opinion. *See Barbara H. v. Kijakazi*, No. 3:20-CV-01890, 2022 WL 300541, at *4 (N.D. Tex. Jan. 12, 2022) ("Here, the ALJ rejected all the medical expert evidence concerning the effects of [the plaintiff's] impairments and determined [the plaintiff's] RFC based on his own evaluation of findings from [the plaintiff's] various physical exams, tests, and readings. This RFC determination is not supported by substantial evidence.") (collecting cases), *adopted*, 2022 WL 296050 (N.D. Tex. Feb. 1, 2022); *Lopez v. Saul*, No. SA-19-CV-01088, 2020 WL 4934462, at *4 (W.D. Tex. Aug. 22, 2020) ("Where 'the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error.'" (quoting *Garcia v. Berryhill*, No. EP-17-CV-00263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018))); *Deborah S. v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021) ("Here, there were no other medical opinions the ALJ considered.  In an opinion

17

short on discussion of the medical records, the ALJ improperly substituted his opinion without reasoning and analysis for all four medical opinions to formulate an RFC.") (collecting cases).

Furthermore, the 2017 regulatory change does not allow the ALJ to overstep the bounds of a lay person's competence and render a medical judgment. *See Moore*, 2022 WL 987735, at *2 ("And by 'raw medical evidence,' this court is referring to evidence that does not permit 'common-sense judgments about functional capacity' and instead requires the ALJ to 'overstep the bounds of a lay person's competence and render a medical judgment.' . . . A lay person would not readily understand how medical notations about disc bulging and 'moderate facet degenerative changes' impact one's ability to work.") (citing *Minor v. Astrue*, No. 1:13cv17, 2014 WL 936438, at *6 (S.D. Miss. March 10, 2014) (citing *Gordils v. Sec'y of Health and Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990))).

"If the ALJ finds no medical opinion of record to be even partially persuasive, there is typically an evidentiary gap in the record between the claimant's raw medical data, impairments, and remaining ability to work." *Harris*, 2023 WL 5826869, at *6. Accordingly, the Court considers whether the ALJ, by finding no medical opinion in the record at least partially persuasive, impermissibly substituted her lay opinion as there was no medical opinion in the record that stated the effects of Plaintiff's limitations on her ability to work or if she was disabled.

In this case, there were no medical opinions in the file. The ALJ noted that "[t]he State agency medical consultants who evaluated Plaintiff's case at the initial

18

and reconsideration administrative levels, found insufficient evidence because Plaintiff did not cooperate." (Tr. 25 (citing Tr. 78-81, 82-85, 89-92, 94-98).) Specifically, on April 19, 2022, the State agency medical consultant noted that Plaintiff failed to return ADLs (activities of daily living), failed to respond to calls or letters, and refused to give ADLs via phone. (Tr. 84.) Furthermore, the consultant noted that Plaintiff's last exam was a well woman exam in September 2020, which documented no acute symptoms and normal physical examination findings. (*Id.*) Similarly, in February 2023, the State agency medical consultant noted Plaintiff's failure to return ADLs, failure to respond to calls or letters, and refusal to give ADLs via phone. (Tr. 91.) In both instances, the State agency medical consultant found "the evidence is insufficient for determination." (Tr. 84, 91.)

The ALJ considered these State agency medical consultant opinions and found them "not persuasive because there was, and is, sufficient evidence to evaluate the case." (Tr. 25.) The ALJ noted that neither the objective medical evidence nor any other non-medical evidence established that Plaintiff's ability to function was so severely impaired as to preclude the performance of light work with the limitations noted. (Tr. 25.) Here, unlike *Joseph-Jack*, the ALJ did not rely on any medical opinion that stated the effects of Plaintiff's limitations on her ability to work or whether she was disabled. The ALJ did not rely on such an opinion because none exists in the record. Thus, while the ALJ cited raw medical reports showing

"normal" physical examination findings,[2] the ALJ did not find any medical opinion persuasive. (*See* Tr. 25.) Despite these normal examination findings, the record also showed significant diabetic neuropathy, amputation of the left great toe, and "abnormal/no sensation in her toes." (Tr. 369, 515-17, 529, 572, 577, 597, 625.) Plaintiff also testified that she uses a walker since her surgery; she can only be on her feet for 30 minutes and needs to sit for a couple of hours before standing again; she goes shopping in a wheelchair; and she has issues standing in the shower because of balance problems. (Tr. 45-44.)

Absent a report from a qualified medical expert, the Court is unable to determine the effects of Plaintiff's conditions and symptoms on her ability to work. Therefore, the Court can only conclude that the ALJ substituted her own lay opinion for that of the medical expert opinions of record and there is an evidentiary gap in the record. *See Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194, 2021 WL 7541415, at *9 (S.D. Miss. Dec. 17, 2021), *adopted*, 2022 WL 566175 (S.D. Miss. Feb. 24, 2022) ("If the ALJ finds no medical opinion of record to be even partially persuasive, there is typically an evidentiary gap in the record between the claimant's raw medical data, impairments, and remaining ability to work.") (internal citations omitted); *see also Ripley*, 67 F.3d at 557 n.27 (the court must be able to determine the effects of the claimant's condition on his ability to work, "no matter how 'small'").

---

[2] Specifically, the ALJ noted that Plaintiff had good, full, or normal strength in her bilateral upper and lower extremities, intact or normal sensation and motor function except for neuropathy in the lower extremities, and normal gait and station. (Tr. 25.)

Because there is not substantial evidence to support the ALJ's RFC assessment, the Court must determine whether such error caused harm. "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Accordingly, the Court may not vacate the judgment unless Plaintiff shows she was prejudiced by the ALJ's error. *See Mays*, 837 F.2d at 1364. Prejudice occurs when procedural errors cast doubt on the existence of substantial evidence in support of the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, the Court finds that the ALJ's substitution of her lay opinion for that of a medical opinion was not harmless error. The record contained no medical opinion evidence which could be used to reasonably conclude that Plaintiff's RFC was appropriate. Without medical opinion evidence, it is at best unclear whether the ALJ's conclusion that Plaintiff retained the RFC to perform light work was supported by substantial evidence and whether an RFC with greater limitations may have directed a finding of not disabled. Remand is necessary when, as here, the ALJ rejected all available medical opinions, cited raw medical data, and made judgments regarding the claimant's RFC. *Beachum v. Berryhill*, No. 1:17-cv-0009, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (internal citation omitted)). Accordingly, the ALJ's substitution of his lay opinion is not harmless, and remand is required on this basis.

## V.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED**

and **REMANDED** for further administrative proceedings.

**SO ORDERED** on June 30, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE